UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| AARON MESECK and JEFFREY WEBBER, *individually, and collectively on behalf of current and former employees, similarly situated*, | Civil No. 10-965 (JRT/AJB) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER GRANTING CONDITIONAL CERTIFICATION** |
| v. | |
| TAK COMMUNICATIONS, INC., MICAH MAUNEY, and BRIAN BOYDEN, | |
| Defendants. | |

Daniel P. Doda, **DODA & MCGEENEY, PA**, 421 First Avenue Southwest, Suite 301W, Rochester, MN 55902; and Timothy A. O'Brien, **O'BRIEN LAW FIRM, PC,** 2915 Wayzata Boulevard, Minneapolis, MN 55405, for plaintiffs.

Jacqueline E. Kalk, and Jeffrey A. Timmerman, **LITTLER MENDELSON, P.C.**, 80 South Eighth Street, Minneapolis, MN 55402, for defendants.

Plaintiff Aaron Meseck brought this action against his former employer, TAK Communications, Inc. ("TAK"), as well as its shareholders and officers Micah Mauney and Brian Boyden (collectively "defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") and Minnesota wage and overtime laws. Meseck, who was paid on a piece-rate basis for work performed as a cable installation technician, seeks recovery of unpaid wages and overtime. He has moved to certify the case as a collective action pursuant to 29 U.S.C § 216(b). Meseck also moves the Court to permit the dissemination

of a notice pursuant to *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). As Meseck has established that he is similarly situated to others he seeks to represent under the low threshold of proof required for conditional certification, the Court grants the motion.

## **BACKGROUND**

TAK is a corporation engaged in the business of providing direct sales and installation of cable television and internet services. (Am. Compl. ¶ 21, Docket No. 51.[1]) Meseck was an installation technician, responsible for installing, upgrading, troubleshooting, maintaining and servicing cable television and internet service. (*Id.* ¶¶ 22-23.) He worked for TAK from May 26, 2009 until his voluntary resignation effective October 16, 2010. (Decl. of Micah Mauney ¶ 3, Nov. 8, 2010, Docket No. 83.) According to Meseck, TAK's compensation policies resulted in a failure to pay him and other technicians overtime compensation and the minimum wage in violation of the FLSA, 29 U.S.C. § 207(a), and the Minnesota Fair Labor Standards Act ("Minnesota FLSA"), Minn. Stat. § 177.24. He also alleges violations of the rest and meal break

---

[1] Two days after defendants submitted their opposition brief, in which they emphasized distinctions between installation technicians classified as employees and those classified as independent contractors, Meseck filed a motion to intervene and to amend caption, in which he requested the Court's permission to allow Jeffrey Webber to intervene and become a putative class representative. (Docket No. 89.)  Webber alleges that defendants misclassified him as an independent contractor.  After United States Magistrate Judge Arthur J. Boylan granted the motion to intervene and amend caption (Docket No. 114), Meseck and Webber subsequently filed a Second Amended Complaint. (Docket No. 116.)  Because TAK's objections to the Magistrate Judge's Order are pending before the Court, and because **the Court's disposition of the instant motion does not depend upon Webber's status as a putative class representative**, the Court will characterize the allegations as Meseck's alone and cite to Meseck's First Amended Complaint.

requirements outlined in the Minnesota FLSA. Minn. Stat. §§ 177.253, 177.254. Specifically, Meseck asserts that TAK did not properly compensate technicians for activities including:

- assembling and meeting with supervisors prior to leaving for first job of the day;
- logging on to employer-issued personal data assistants ("PDAs") to check for work orders;
- returning unused equipment and supplies from the previous day's work and loading equipment and supplies necessary for the current day's work;
- performing vehicle maintenance and traveling between jobs;
- assisting other installation technicians;
- performing repair work on installations unsuccessfully completed; and
- completing necessary paperwork including daily reconciliation sheets.

(Am. Compl. ¶ 12, Docket No. 51.)

In addition, through his own declaration and those of numerous other installation technicians, Meseck alleges that TAK required its technicians to use vehicles either purchased or rented from TAK, and to pay for the gas required for traveling for work purposes. (*See, e.g.*, Decl. of Aaron Meseck ¶ 6, July 6, 2010; Decl. of Steven Copeman ¶ 6, July 1, 2010, Docket No. 29.) TAK deducted a weekly fee from technicians' paychecks for the use of PDAs that were issued and required by TAK. (*See, e.g.*, *id.* ¶ 8.) Meseck asserts that technicians generally worked six days a week and ate their lunches while driving between jobs. (*See, e.g.*, *id.* ¶¶ 12, 18.) TAK not only issued paycheck

deductions for installation technicians' use of company vehicles and PDAs, according to Meseck, it also deducted for the use of company tools, uniforms, and other employer related costs.  (*See, e.g.*, *id.* ¶ 22.)

Meseck seeks to represent similarly situated installation technicians who have worked for TAK on or after March 25, 2007, through the certification of his lawsuit as a collective action under 29 U.S.C. § 216(b).  He also seeks to represent a Minnesota class under Fed. R. Civ. P. 23.  Over thirty other installation technicians have filed declarations with the intent to join the collective action.

Defendants have alleged various distinctions among individuals performing installation work for TAK.  First, according to defendants, TAK serves customers of two different clients, Charter Communications ("Charter") and Midcontinent Communications ("Midcontinent").  (Mauney Decl. ¶ 3, Docket No. 83.)  TAK technicians in Minnesota and Nebraska provide installations and services exclusively for Charter customers, while technicians in North Dakota and South Dakota serve Midcontinent customers.  (*Id.* ¶ 4.)  TAK provides installations, but not service calls, for Midcontinent only on a seasonal basis.  (*Id.* ¶ 10.)

In addition, defendants allege that TAK did not regularly employ installation technicians until November 2008.  (*Id.* ¶ 12.)  Prior to that time, the individuals who provided installation services on TAK's behalf were predominantly classified by TAK as independent contractors who were required to execute independent contractor agreements.  (*Id.*)  Defendants cite a "Narrative Report" by the Department of Labor ("DOL") regarding its investigation of TAK's compensation policies from December

2006 to December 2008, which appears to support the validity of defendants' classification.  (*See id.*, Ex. 1.)  According to defendants, numerous individuals who have consented to join this action as opt-in plaintiffs were only ever engaged with TAK as independent contractors.

The third distinction among installation technicians highlighted by defendants is that since November 2008, TAK has employed both non-exempt hourly and non-exempt piece-rate technicians.  TAK's hourly technicians are paid a set hourly rate while piece-rate technicians are paid based on the types of installation and service jobs they perform at one of six different compensation levels, commensurate with experience and seniority.  (*Id.* ¶¶ 17-18.)  Piece-rate technicians serving Charter customers historically recorded their working time in their PDAs, then transitioned into using paper timecards after utilizing a timekeeping software program for approximately one month.[2]  (*Id.* ¶¶ 22-25.)  TAK's hourly installation technicians, however, have always recorded their working time either through a time clock or paper timecards, but never through use of their PDAs.  (*Id.* ¶ 27.)

During his tenure at TAK, Meseck was a piece-rate installation technician serving only Charter customers in Rochester, Minnesota, although he spent approximately one

---

[2] Piece-rate technicians serving Midcontinent customers, by contrast, have always recorded their working time on paper timecards submitted to TAK at the end of each working week.  (*Id.* ¶ 26.)  Defendants also allege that piece-rate technicians serving Midcontinent customers are compensated on a different pay schedule than piece-rate technicians serving Charter customers.  (*Id.*)

week working in Nebraska in July 2009.  (Dep. of Aaron Meseck, Oct. 11, 2010, Ex. 2 at 37:7-14, Docket No. 82.)

## ANALYSIS

### I.    STANDARD FOR CONDITIONAL CLASS CERTIFICATION

The FLSA permits an employee alleging wage and hour violations to assert claims on behalf of himself "and other employees similarly situated."  29 U.S.C. § 216(b).  "Such a collective action is not subject to the class certification standards-numerosity, commonality, typicality, and adequacy of representation-under [Federal] Rule [of Civil Procedure] 23."  *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 6 (D.D.C. 2010).  Rather, plaintiffs in a FLSA collective action need only establish that they are similarly situated. *Id.*  Unlike class actions under Rule 23 in which a potential plaintiff's claim is automatically included in the case unless he "opts out," under § 216(b) plaintiffs must affirmatively "opt in."  29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.")  In *Hoffman-La Roche*, the Supreme Court held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."  493 U.S. at 169.  Accordingly, Meseck seeks conditional certification of a collective action and permission to send a *Hoffman-La Roche* notification to potential opt-in plaintiffs.

To determine whether a case should be certified under the FLSA, courts in this district typically employ a two-step process:

> First, the court determines whether the class should be conditionally certified for notification and discovery purposes. **At this stage, the plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan**. In the second stage, which occurs after discovery is completed, the court conducts an inquiry into several factors, including the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that appear to be individual to each plaintiff, and other fairness and procedural considerations.

*Burch v. Qwest Commc'ns Intern., Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (emphasis added). At the initial step, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties . . . ." *Dege v. Hutchinson Tech., Inc.*, No. 06-3754, 2007 WL 586787, at *2 (D. Minn. Feb. 22, 2007). Because the Court's inquiry is "whether notice of the action should be given to potential class members[,]" courts sometimes refer to the first step as the "notice stage." *Loomis v. CUSA LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009).

Plaintiff's burden at the notice stage "is not onerous." *Id.* He need only make "a modest factual showing sufficient to demonstrate that [he] and potential [class members] together were victims of a common policy or plan that violated the law." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (internal quotation marks omitted). "Put another way, a plaintiff must demonstrate that there is some factual nexus that connects him to other potential plaintiffs as victims of an unlawful practice." *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 967 (W.D. Wis. 2008). "In determining whether plaintiffs have met their initial burden [to warrant conditional

certification of a collective action under § 216(b)], courts rely on the complaint and any affidavits that have been submitted." *Id.* at 967-68.

## II. MESECK AND MEMBERS OF THE PROPOSED CLASS ARE SIMILARLY SITUATED

In conjunction with the instant motion, Meseck has proffered nineteen declarations from installation technicians indicating commonalities that form the bases of the FLSA allegations. The declarations indicate that the technicians had similar job duties and were subject to the same challenged procedures that allegedly resulted in wage and hour violations. Specifically, Meseck and other declarants challenge TAK's policies of requiring its technicians to lease or purchase its white vehicles, deducting employer-related costs from technicians' paychecks, compelling its technicians to work twelve-hour days often six days a week, and not compensating its technicians for "off the clock" non-installation work activities including vehicle maintenance, attending mandatory meetings, travelling between jobs, returning and unloading unused equipment, assisting other technicians, and returning to prior jobs to address customer complaints.

Defendants do not object to the notification of a putative class of TAK installation technicians who, like Meseck, were piece-rate installation technicians not classified by TAK as independent contractors and who served only Charter customers. Defendants argue, however, that technicians who provided services to Midcontinent, were classified as independent contractors, and/or were paid on an hourly basis are not similarly situated to Meseck and therefore should not be given notice of the opportunity to opt-in at this stage. The Court will address each objection in turn.

First, defendants object to the conditional certification of a class including installation technicians who served Midcontinent customers. However, the distinctions defendants have identified between technicians serving Midcontinent customers and Charter customers are not relevant to the underlying claims of wage and hour violations. (Mauney Dec. ¶ 26, Docket No. 83.) Defendants have not argued that technicians serving Midcontinent customers were not subject to the policies on which the claims in this action are based, including the employer-related deductions and failure to compensate for non-installation activities. To the contrary, one installation technician who served both Midcontinent and Charter customers stated that "TAK's policies . . . were essentially the same" regardless of whether the customer was from Midcontinent or Charter. (Decl. of Nick Taylor ¶ 5, Nov. 15, 2010, Ex. G, Docket No. 95.)

Defendants also point to Meseck's deposition testimony in which he stated that he did not purport to represent the interests of technicians serving non-Charter customers and did not have any personal knowledge regarding the compensation of those technicians. (Meseck Dep. at 41:18-42:20, 122:17-122:25, Ex. 2, Docket No. 82.) Counsel for Meseck objects that the question calls for a legal conclusion. Further, Meseck testified that he intends to represent **all** installation technicians paid by piece. (*Id.* at 122:17-19; 124: 8-12.) The potential inconsistency in Meseck's testimony does not serve to defeat his motion for conditional certification in these circumstances.

Next, defendants argue that technicians it classified as independent contractors should not be given notification or the opportunity to opt-in to this lawsuit because they are not similarly situated to Meseck and other technicians not so classified. As the court

in *Balarezo v. NTH Connect Telecom, Inc.*, No. 07-5243, 2008 WL 1944116 (N.D. Cal. May 2, 2008) reasoned in rejecting this argument:

> Plaintiffs[] alleg[e that] there is a single class of technicians who were paid by piece and not paid overtime when overtime should have been paid. **The fact that certain of those technicians may have to demonstrate that they improperly were categorized as independent contractors as part of proving their claims does not mean that they cannot be included in the same class with other technicians who were paid an hourly wage**.

*Id.* at *3 (emphasis added).

Meseck has produced numerous declarations from installation technicians who challenge their classification as independent contractors. (*See, e.g.*, Decl. of Jeffrey Webber ¶ 30, Nov. 10, 2010, Ex. A, Docket No. 95.) As Webber explained, although he was classified as an independent contractor, "TAK controlled what jobs I received, how I was to complete the jobs, and the number of jobs I received. I only worked for TAK and was not at liberty to complete jobs on my own. . . . In reality, I was completely dependent on TAK." (*Id.* ¶ 27.)

Installation technicians who were initially classified as independent contractors but later classified as employees found no relevant difference in the way defendants treated them based on defendants' classification. (*See, e.g.*, Decl. of Jan Morten Buseth ¶¶ 3, 29, Nov. 10, 2010, Ex. B, Docket No. 95.) Crucially, technicians classified as independent contractors complain of the same TAK policies which form the basis of Meseck's claims of wage and overtime violations, including the failure to compensate them for time spent at meetings, between jobs, and loading equipment, as well as the deductions for employer-related costs. (*See, e.g., id.* ¶¶ 5-24.)

Moreover, if and when the Court has an opportunity to address the merits of the claims in this case, neither defendants' classification nor the DOL document proffered by defendants will be determinative of whether individuals are "employees" covered by FLSA. Rather, courts look at the "economic reality" between the parties. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *see also Catani v. Chiodi*, No. 00-1559, 2001 WL 920025, at *3 (D. Minn. Aug. 13, 2009) ("The factors in this economic realities test, although not exhaustive, include: (1) the degree of control over the manner in which the work is performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree or permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's business.").

Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion. *See, e.g.*, *Loomis*, 257 F.R.D. at 676-78; *Dominquez ex rel. v. Minn. Beef Indus., Inc.*, No. 06-1002, 2007 WL 2422837, at *3 (D. Minn. Aug. 21, 2007) (arguments regarding "the individualized inquiries required and the merits of Plaintiff's claims are inappropriate" at the notice stage).

Defendants cite to *Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000), in which the court declined to conditionally certify a class based on the allegation that class members were improperly classified as

independent contractors and denied overtime wages. In that case, however, the plaintiff had "failed to demonstrate any basis for a finding that he is similarly situated with other potential claimants" since a collective action "is only appropriate where those in the pool of potential claimants perform the same duties as the plaintiff." *Id.* at *2. Here, by contrast, Meseck has proffered numerous declarations indicating that TAK technicians performed the same work and were subject to the same challenged policies regardless of how TAK classified them.

At the notice stage, "[p]laintiffs need not show that members of the conditionally certified class are actually similarly situated. That determination will be made after the close of discovery." *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007). The question before the Court is whether Meseck's allegations and accompanying declarations have established "a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." *Burch*, 500 F. Supp. 2d at 1186. Meseck has amply achieved that modest factual threshold with regard to the installation technicians that he alleges were misclassified as independent contractors.

Finally, defendants argue that Meseck is not similarly situated to technicians who are paid on an hourly basis. From the Amended Complaint, declarations, and motion papers, it is clear that TAK's policy of paying its technicians by the piece is one of the means by which Meseck alleges TAK violated wage and overtime laws. Notably, Meseck has not submitted any declarations from hourly employees. Additionally, Meseck testified that he was unaware of any technicians being paid on an hourly basis

and that he purports to represent only those paid on a piece-rate basis. (Meseck Dep. at 42:21-43:2, 122:7-122:25, Ex. 2, Docket No. 82.)

Discovery, however, may reveal that hourly technicians were subject to several of the challenged policies as well. Given the low threshold of proof necessary at the notice stage, the Court will conditionally certify a class including hourly and piece-rate installation technicians and reconsider this argument, as well as other regarding distinctions among TAK's installation technicians, on a decertification motion. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (under § 216(b), "[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members") (citation omitted); *see also Encinas*, 265 F.R.D. at 6-7 (granting unopposed motion for conditional certification of class including both hourly and piece-rate employees because employees' job duties were substantially similar as were overtime pay violation allegations).

### III.   TIMELINESS OF DEFENDANTS' RESPONSE BRIEF

Meseck asserts that defendants' response brief was untimely. The pretrial scheduling order required plaintiff to file his motion for conditional class certification on or before September 1, 2010; defendants' response brief was due by October 1, 2010. (Docket No. 20.) Meseck's motion was timely filed six weeks before the established deadline, but defendants' response was filed on November 8, 2010, thirty-nine days beyond the deadline set forth in the scheduling order. Plaintiff requests that the Court sanction defendants for their violation by disregarding their response brief, granting

plaintiff's motion, and awarding plaintiff attorney fees and costs associated with the motion.

The Court has discretion to sanction parties who violate pretrial orders. Fed. R. Civ. P. 16(f); *Firefighter's Inst. for Racial Equal. ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 902 (8th Cir. 2000). However, it appears that Meseck was not prejudiced by the timing of defendants' submission, nor does he seem to have incurred any fees he would not otherwise have incurred because of the delay. There has been a steady stream of opt-in plaintiffs submitting declarations since this action was filed, including twelve between the October 1, 2010 deadline for defendants' response brief and the actual submission of the brief on November 8, 2010. Plaintiff filed the motion to intervene, presumably to address defendants' arguments regarding the differences between independent contractors and other employees, merely two days after defendants filed their response brief. While noncompliance with a scheduling order should not be condoned, sanctions are unwarranted in these circumstances.[3] *See Tomlin v. Holecek*, 158 F.R.D. 132, 136 (D. Minn. 1994) ("We do not believe that subservience to a Scheduling Order of this Court should overshadow our fundamental obligation to ascertain the truth, at least in the absence of grave prejudice to the compliant party.")

---

[3] In their sur-reply, which defendants requested leave of the Court to file, defendants elaborate on how discovery disputes resulted in their late submission. Specifically, defendants sought to depose Meseck and several opt-in plaintiffs before responding to the motion for conditional certification, but due to scheduling conflicts they were not deposed until October 2010.

The Court's decision to conditionally certify a class as Meseck requests is unrelated to the timing of defendants' submission.

## IV.   NOTICE AND CONSENT FORM

Defendants have requested numerous revisions to Meseck's proposed *Hoffman-La Roche* notice and consent form. Specifically, defendants object that the notice and consent form: (a) should be limited to piece-rate installation technicians classified by TAK as employees who work for Charter customers; (b) improperly refer to a generic claim for unpaid "wages" as opposed to minimum wage and overtime claims and improperly describes defendants' defenses; (c) create the misleading impression that prospective opt-in plaintiffs must consent to be represented by Meseck and his counsel. They also object to Meseck's request for contact information of prospective class members' as overly broad, and seek to limit the opt-in period to sixty days.

Defendants' first objection replicates their arguments that the conditional class is overly broad. As discussed above, these issues are more appropriately considered in the context of a decertification motion and the Court will conditionally certify the class Meseck has proposed. Meseck has agreed to revise the notice and consent form to incorporate defendants' concern regarding references to claims for "wages." He has also agreed to defendants' proposed sixty day opt-in period. Accordingly, there are only two remaining issues of contention: the ability of opt-in plaintiffs to file suit with different counsel and a different representative, and the request for prospective class members' contact information.

With regard to defendants' objection that the notice is misleading in that it identifies plaintiff's counsel as counsel for the opt-in plaintiffs and identifies Meseck as the designated representative, opt-in plaintiffs are in fact agreeing to these conditions. As another district court explained:

> [D]efendants['] language would suggest that plaintiffs' counsel were not litigating for and in behalf of all opt-in plaintiffs, which is the type of action that § 216(b) allows. Anyone who knows how lawyers work knows that a collective action allowing each opt-in plaintiff to have his or her own lawyer is simply not workable. Potential plaintiffs who want a different lawyer are free to take action on [their] own instead of opting into the suit . . . .

*Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009) (alteration in original) (internal quotation marks omitted). Under a section titled "No Legal Effect in Not Joining This Suit," Meseck's proposed notice explicitly states that individuals are free to file their own lawsuit if they so choose and that they will be unaffected by any judgment or settlement if they do not opt-in. The Court therefore rejects defendants' editorial changes in this regard.

Defendants' objection that they should not be required to provide Meseck with the email addresses and telephone numbers of putative class members is based on their concern that contact between counsel and prospective opt-in plaintiffs should be limited. Meseck objects that if, as defendants request, he is limited to a single letter sent through regular mail, potential opt-in plaintiffs who have moved may not receive an opportunity to opt-in. To address both parties' concerns, the Court directs the parties as follows: defendants will give plaintiff the addresses and email address of prospective opt-in plaintiffs. Meseck may only use the information for the purpose of sending the notice.

He must first attempt to contact prospective plaintiffs by regular mail, once; only if plaintiff reasonably believes that the address was incorrect may he then attempt to contact such individual by email, once.  No telephone numbers shall be provided.

Meseck separately requests that the Court permit him to amend the notice and consent form to reflect the addition of two defendants.  The Court agrees.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Certify Class as Collective Action [Docket No. 22] is **GRANTED**.  Plaintiff shall revise and distribute the notice and consent form in the manner specified in this Order.

DATED:  March 28, 2011  
at Minneapolis, Minnesota.

\_\_\_\_\_s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge